Good morning, Counsel. Good morning, Your Honors. Mary McCutcheon for the appellants, and I would like to reserve two minutes of my time for rebuttal if I may. All right. So if it pleases the Court, the District Court ruled that appellants can only seek defense costs under one policy period, the 2007-2009 policy period, for 29 cases that were served and filed in two successive policy periods. And the Court did so because it determined that all of the allegations in those cases were either subject to a notice of circumstances given in the first policy period, or that all 29 cases only alleged claims based on wrongful acts that were somehow related to the wrongful acts in the notice of circumstance, as those terms are used in the policy. A review of the cases would show as a matter of law that that is simply incorrect. So first I'd like to look at the language of the notice of circumstances and the policies. The notice of circumstances has to give written notice to the insurer of the circumstances and the reasons for anticipating such a claim with full particulars as to dates, persons, and entities involved. The notice here did not give those specifics to most of the cases that we're talking about. And I want to make clear at this point what we're talking about is coverage for either voluntarily or the defendants, the appellants have prevailed. So we're simply talking about defense costs in this case. At least for the present, there's true there are some cases that are ongoing, but the issue of indemnity for any settlement or judgment, if there were to be any, is not before the Court. So let me give you a few examples of some of the cases that are different from what was in the notice of circumstance. Can I just insert a question? The notice of circumstance that we're talking about, is that in the motion for a conversion order? It's actually the motion to convert itself, Your Honor, which was in the first policy period. It's quite lengthy. It goes into quite a bit of detail. That's true. And I'm happy to address that. And it went into a lot of detail. It was filed by the creditors committee, seeking to appoint a trustee. And then the insured sent it on to National Union and said, please treat this as a notice of circumstance. The insured did not give any other detail. So what the motion to convert talked about is it did say, obviously, the creditors committee was not happy with the way that the debtors in possession were handling the estate once the bankruptcy has been filed. It complained that the debtors weren't getting a plan together. It complained the debtors weren't turning information over. It complained the expenses that were being charged, they thought improperly to the debtors. And it talked about six specific pre-petition transfers, which the debtors committee alleged were distributed to one of the debtor affiliates, Empire Partners. And the dates of those six specific transfers were in May and June of 2007. The motion also said, you know, that they thought that the debtors principals were treating the debtors financial accounts as their own personal piggy banks. But again, most of that was in relation to post-petition conduct. They also said a trustee should be appointed to investigate and pursue causes of action against debtor principals and affiliates, but it doesn't identify what the other transfers might be or what the causes of action would be. Counsel, is it your view that if a transfer was inadvertently omitted from the Notice of Circumstances, then it's not included? Is that where your argument is? The notice, I think it's not quite that extreme here, Honor. When you look at there were six transfers specifically identified by the creditors committee as what they thought the problems were. That was sent on to the insurance company. Why couldn't the Notice of Circumstances be read more whether or not each and every one was articulated explicitly? Why wouldn't that be the umbrella notice that was given? Because that is not how it was transmitted by the insured to the insurance company. The insured just said here's a motion to convert, and the insured did not give more of the policy language. The policy language is very broad, related to, arising from, and all of the subsequent actions are first cousins at a minimum, or maybe siblings, to the specified examples that are contained in the Notice of Circumstances. Your Honor, I think there are two different issues to be addressed. One is, first of all, whether the acts that were later raised are in the Notice of Circumstances, and then the next is whether or not they are related wrongful acts. So it's really a two-step process. So with respect to... What come within the language of the policy related to, arising from, right? That's true, but the way that, yes, but so first under the Notice of Circumstance, so it's really a two-step analysis. Under the Notice of Circumstance, you have to give written notice to the insurer of circumstances and the reasons for full particulars as to dates, persons, and entities involved. I think in this case, to me, a little bit of it is the devils in the details, but these are incredibly complicated transactions that clearly have an interrelationship with each other, given the way that the entities were structured. And so under those circumstances, why is the Notice of Circumstances, or am I correct in assuming that the conversion motion was made a part of the notice, and the conversion motion described these entities and the way in which the transactions were used, you know, use of the piggy bank reference. So that coupled with, really, counsel's own analysis that the transactions at issue are essentially involving the same transfers, there's an forensic accounting did, we figured out all 29 of these cases overlap, and these are representations that counsel made in connection with the hearing in the lower court. So when you look at the Notice of Circumstances, the conversion motion that described the relationships of these entities and all of these transactions and the fraudulent activity going on, coupled with counsel's own assessment of the interrelationships between the transactions, and then you look at the broad policy language, how can you, under those circumstances, argue that it has to be more specific than that? Because in this case, really you have to look at the burden of proof and how the duty to pay defense costs is assessed here. In this case, the Notice of Circumstances is used to deny or to limit coverage to one policy year. And all that we need to do, whether you're looking at this as a duty to defend or a duty to pay defense cost, we have to show the potential for coverage. The potential for coverage is that the lawsuits were filed and served in the second and third policy years. So the claim was made in the second and third policy years. National Union, that then has to show that they are excluded from coverage because they were the subject of an earlier notice. So it's their burden of proof to show that they were the subject of the earlier notice or that they were related acts. With respect to that argument of counsel that you referred to, the record actually shows that that was done in the context of the cases had, some of the cases had initially been assigned to a judge who knew Mr. Previty, and she transferred many of the cases away to another judge. The counsel is making an effort to have the remaining cases transferred away, and was explaining, in fact, in the full context, that on the face of the cases, they did not show overlapping transactions. And there were statements made that after some forensic accounting, it was found that the cases overlapped. But that is not a ruling that for the purpose to advance defense costs, that all... There was another context, though. It wasn't there with the $75,000 retention, when counsel at that time said, we don't have to pay the $75,000 retention over and over again, because these cases are related. We only have to pay it once. So it was... They were related for purposes of avoiding the $75,000 payment, but not related for purposes of the policy years. And, Your Honor, that was in the context of a legal argument that was made in response to an assertion by National Union. It's not evidence of how the policy should be construed, and it was in the context of arguing whether or not the retention should be... If National Union conceded, there were multiple claims, which it never did, how the retention should be applied. Evidence of how the parties at least construed the policy? Only in the context of the retention, Your Honor, and not in the context of the other claims. And again, this was a legal argument. It's not evidence under AIU, under the rules of construction. You look to evidence of how the policies construed the policy, how the parties construed the policy before policy formation. How people describe the policy afterwards is not evidence of policy formation. So, and I think also when you look at how the Ninth Circuit has applied case law when they're looking at similar cases, they have never used... There's never been any situation where vague allegations in a notice of circumstance have been used to then limit coverage for future claims. What case in particular are you thinking about when you make that statement? It would be the KPFF case. Then it would be under the Ninth Circuit law, we would have financial management, which deals more with the related acts issues. And Eureka, the Eureka case also. And even base savings, which talks about related acts, say that related acts cannot be so attenuated and so far apart that they're going to really sweep everything in beyond what the insured would have expected. Is KPFF a Ninth Circuit case? I'm sorry, Your Honor, it's a California case. I apologize. So what Ninth Circuit case were you thinking about? There is, on the notice of circumstances, there is no Ninth Circuit case that addresses the situation here in the context of a notice of circumstance. Those cases talk about the notice of related, talk about the related wrongful acts. I thought you said no Ninth Circuit case has ever, and that's what caught my attention, and that's why I asked you about the Ninth Circuit case you had in mind when you made that statement. I'm sorry, Your Honor, I misspoke. The Ninth Circuit cases which talked about notice of circumstances, like the MGM case, or the XL case, were very specific notice of circumstances of specific transactions were given during the first policy period. And then subsequent, and those I believe are district court cases. The problem you're having with me, you're saying that the relationship between the claims that were made outside the first two-year policy period are so attenuated that they should not be considered to be either related or arising from the same circumstances. I look at them, they don't look attenuated to me at all. They involve skullduggery, involving fraudulent transfers, it was all going on, it was all basically the nature of the things that were described in the notice of circumstances. Give me an example of a claim or a controversy which came up during the second or third policy period which you say was completely different from what was contained in the notice of circumstances that came in during the first policy period. I think there's two different issues, which is one is how broadly you can construe the notice of circumstance, but in terms of examples, you have the cases that were filed in the subsequent policy years were not only fraudulent conveyances, they were also preferences. They were cases which said, hey, this money was transferred, they didn't have to prove that it was transferred improperly, it could have been that a debt was paid, consideration was proper, but it was done within the period of insolvency, so it had to be brought back into the estate automatically under bankruptcy provisions. That isn't skullduggery, that's just people making payments that later are found to be improper because of the bankruptcy. But fraudulent conveyances and preferences that arise from the same nucleus of facts, I'm sorry, just seem pretty related to me. Well, the nucleus of facts then is what you're assuming, Your Honor, is that the nucleus of facts is the running of the bankruptcy estate. And if you look at how Ninth Circuit law looks at the related acts, you look at financial management where there was investments in the same funds, the court found those were not related acts. You look at the Eureka case where there was an aggressive loan policy. It's true that the case there did not talk about common nucleus of facts, but it did say you had an aggressive loan policy, but then you have intervening business decisions that actually caused the wrong. And so those intervening business decisions are the wrongful acts. Did you want to save some time for rebuttal? Yes, I do, Your Honor. Thank you. May it please the Court. Good morning, Your Honors. Good morning. Michael Hartley on behalf of National Union. What I'd like to do, Your Honors, in explaining why the Court's decision granting summary judgment for National Union should be affirmed is to emphasize briefly the breadth of the policy language that's at issue here. And the differences between that policy language and all of the cases that plaintiffs are talking about. As well as the uniqueness of that in the circumstance of a notice or in the situation of a notice of circumstance in the policies here. And then be able to explain briefly how those play out in the facts in this case. Here you have policy language both in the notice of circumstance provision itself and in the related acts provision of the policy. Which is essentially identical, which allows for various types of connections. Very slight connections, each of which is enough under the policy language and the law to tie a notice of circumstance and a subsequent case together. They include not only the arising out of relating to language, which under California law is given a broad plain meaning construction. It includes alleging. It includes what the policy defines as related acts, which include not only related, which is also defined under California law as including causal and logical connections under base cities. But also the same transactions that are the same transactions that rise out of a common nucleus of fact. All of those concepts, each one of which is enough to create the necessary connection here, are all part of that same definition. And they're all imposed together. And so you have, just as an example, the Excel specialty case where they looked at a policy language that was somewhat similar that had all those broad ties. And say, yes, you apply that according to its broad meaning. And you apply it looking at all the different strands that are part of that definition and how it comes into play. In Eureka, they didn't have the definition of related acts. They had purely arising out of language. In base cities, again, they didn't have the definition of related wrongful acts. And none of the plaintiff's cases did. The other key issue is that this is a notice of circumstance case. And that does make an enormous difference. And there are California cases and Ninth Circuit cases dealing with exactly this issue and the breadth of it. So in the Continental BMGM decision, which is a Ninth Circuit decision, the court looked at a notice of circumstance. And the notice of circumstance there, all it said was we have a merger transaction that we think will have some claims arising from it relating to producers, among other things. There was a claim that came afterwards that was different from the producer claims that had been filed at the time. That wasn't referenced specifically in the notice of circumstance. And the court looked at that and said, yes, you gave notice, the amount of information that you had at the time, that there would be claims coming from this merger transaction. That was enough. And in that same case, MGM, they cited another California case where it was even broader, Continental Insurance, where in that case the notice of circumstance just said the company is engaged in various acquisitions. We expect there may be claims relating to those acquisitions and the negligent management and handling of the company. A claim comes up several years later. The claim relates to the management of the company. That was enough by itself. All of those cases deal with being able to relate a claim back to get coverage under the first policy period. So, counsel, counsel for the insured seems to think that financial management weighs against your argument. Why is that not true? It's not at all true, Your Honor, for several reasons. Why not? First of all, it is in a notice of circumstance case, so there is no umbrella that ties the two cases that were in front of FMA together. They just had one investor case and then a second investor case together that were trying to be related. There was no notice of circumstance that said, hey, if there are any investor cases coming down the line, we're giving you notice now that they may be coming. So as a factual setting, it's a completely different circumstance. The language that was there was narrower than the language that's involved here. And in addition to that, we have here exactly the admissions that the court has already identified here. Here we have counsel saying in letters that were exchanged during the case that the court looked at saying, those two transactions, those are related. So it's like the counsel for the investors in MMA saying, I understand that there's two cases there, but those two things are related. But opposing counsel said, that's not evidence of what the contract meant at the time it was formed, and we can't consider that. What's your response? Regardless of what counsel is saying it meant at the time, what the admissions are is that those cases have the necessary ties that are what then implicate the policy language itself. But what case tells us we can use that as an admission? We have several cases that we've cited in our briefs, Your Honor, including Bank America, including... Are you using the judicial admission, I mean the admission in court? Yes, and also the theory that those are just straight admissions. They don't have to be judicial admissions in an estoppel type setting, but that they are admissions themselves. And what we're saying is, if you look at just the pleadings in the case, if you want to analyze it from the different evidence, if you look at just the pleadings in the case, the pleadings themselves demonstrate that everything is related. We as insurers also look at the extrinsic evidence that's involved, and the only extrinsic evidence that was presented to the court was extrinsic evidence that these cases were related in some way. There's nothing that was provided by plaintiffs on the evidentiary scale on their side at all. So what the court had in front of it was both the policy language itself, which was undisputed, the notice of circumstance, the contents of which are undisputed, the underlying complaints, the contents of which were undisputed, and then the evidence that... If we look at a really complex fraud case involving many, many different entities, lots of different transfers and transactions, and maybe even different schemes, does that matter under your argument? Or to the extent that the different schemes fall within the same umbrella of the series of fraudulent conduct, that would be sufficient because of the breadth of the policy language? I think the answer is yes to both of those concepts, Your Honor. The breadth of the policy language provides the umbrella that collects all of those cases together, number one. But number two, the transactions themselves are also related at a specific factual level with respect to the different transactions at issue, and that also ties them together. So as an example, with respect to the Palmdale case in EPI 2, you have within that case a series of transactions. Now, the transactions are related together at a factual level, not just because they are alleged to be part of a grand scheme, which is true, and the purpose of those transactions relates them together, but also, as an example, because they all are part of the same ongoing refinancing transaction. The EPI 2 complaint and the Palmdale complaint together both allege that there was a refinancing transaction that had three parts, which the Palmdale investor and which the Praviti parties agreed to up front. The Palmdale investor would invest. In order to invest, they needed to extend the IndyMac loan, and the purpose of doing both of those things was to get refinancing for the existing IndyMac loan with the second bank. So those are transactions which, regardless of any unifying purpose which they have, were all part of one transaction that the parties agreed to up front would be occurring in a continuous manner in a three-month period, all of which were designed to refinance the properties. So you have both at a transactional level ties, and then at an umbrella level, you have all of the transactions falling within the broader scope of what the Notice of Circumstance is saying. The Notice of Circumstance was filed by the Bankruptcy Trustees, right? That's by the Creditors Committee seeking to appoint a bankruptcy trustee. So I was struggling a bit to see the relationship between the description of malfeasance contained in the motion for conversion and something like the Palmdale litigation, which involved basically investors claiming that there was a shell game that the Corvitti people were engaging in to move monies back and forth to make one entity look richer than it actually was, and then they would just move the money out as soon as they got the investments. That feels a little different from what's being described in the motion for entry of order conversion. Can you tell me how those are related? Yes, and those go back to the example that I was giving. The Notice of Circumstance itself describes the financial shenanigans that were a main part of that scheme. The $17.5 million in transfers, the specific transfers that are mentioned there, are the transfers that are specifically alleged in both the Palmdale case and EPI-2, and those play out through all of those transactions. What happened is that you have, in the allegations in EPI-1, you have them saying, the investor, we need money to invest to survive in this particular project. We are going to have an investor come in and invest. In order for that investor to invest, we need to extend our existing loan because the maturity date is coming up in two months. In order to do that, we have to satisfy the liquidity and net worth requirements of that loan. In order to do that, we engage in the transactions that are specifically alleged in the Notice of Circumstance. Then those same representations of liquidity and the same representations of net worth are then made again three months later to the second lender. They're made to that second lender because that was what the parties specifically agreed they would do in the first place, three months earlier, when they refinanced the IndyMac loan and got the investment in the first place. They all tie together specifically based on the references in the complaint itself, which if Your Honor wants to know the specific paragraphs, it's at ER-2046, ER-2015, ER-2123, and ER-2121. All of those are the specific paragraphs in both of the complaints where they specifically reference the ties between those transactions. This case, I think to sum up, Your Honors, this case is in some respects unique and in some respects not. There are cases, as we said, in California Ninth Circuit that deal with the Notice of Circumstance and going backwards to bring a case into coverage. Their plaintiff's position here is that while you can read the language in one respect going that way, you have to read the language differently when you're talking about limiting coverage to just that one period. There's no authority that we're aware of under California law that allows that. To the contrary, there are several cases applying exactly that same broad language to exclusionary language. Those include the Mettle case and Century Transit. The language going both ways as it does is beneficial and fair to both parties. It both expands the coverage period for the plaintiffs. It allows the insurer to compartmentalize that coverage into particular policy periods. Not only that, it also provides benefits to the insurers in exactly the same way that they've tried to take advantage of it here, which is it allows them to get single retention for what would otherwise be a very substantial amount of retentions added together for 29 different actions. I have nothing further, Your Honor, unless you have questions. It appears not. Thank you, Counsel. Thank you very much. Rebuttal? Yes, Your Honor. Just a couple of quick points. Again, the question of retentions is not before the court. The notice of circumstance cases that the insurance company relies upon were specific notices that alleged here are some transactions and we believe, for example, that other people will file lawsuits. The trustee here did not say he was going to file other lawsuits. He said he was going to investigate. He complained about these six specific transactions. And again, going under KPFF, which is California law, where during the first policy period, the lawyer for the insured was saying, I think there may be more stuff out here. I think there's going to be something else. When the new lawsuit was filed, the court found that the statements, there may be something else out here, were not specific enough. With the Palmdale cases, again, because we're talking about defense costs, there were wrongful acts alleged in the Palmdale cases, such as failure to pay contractors after the investors invested in the project, which could form the basis for separate claims for wrongful acts that were not related to the so-called shell game, which is really a hypothetical on the behalf of the plaintiffs. All right. Thank you, counsel. We understand your argument. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Ponsor, Rawlinson, Nguyen